UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

James G. Gilles,

    Plaintiff,

-V-
                                            Case No. 1:04-cv-00702
                                            Judge Michael H. Watson

Dr. David Hodge[1], et al.,

    Defendants.

## OPINION AND ORDER

Plaintiff asserts claims under 42 U.S.C. 1983, alleging that defendants violated his rights under the First and Fourteenth Amendments by preventing him from engaging in religious speech on the campus of Miami University ("MU") in Oxford, Ohio. This matter is before the Court on defendants' motion to dismiss (Doc. 6) on the grounds that plaintiff fails to state a claim upon which relief can be granted. For the reasons that follow, the Court grants defendants' motion to dismiss.

### I. Facts

The Court accepts as true the well-pleaded facts set forth in the Complaint. Plaintiff is an individual citizen who resides in Florence, Kentucky. Defendant Dr. David Hodge is the President of MU. Plaintiff sues Dr. Hodge in his official capacity only. Defendant Andrew Powers is Patrol Commander for the MU Police Department. Plaintiff sues Powers in his individual and official capacities.

---

[1] Dr. David Hodge, the current president of Miami University, was substituted for Jim Garland on July 21, 2006 under Fed. R. Civ. P. 25(d).

Plaintiff is a Christian, and speaks on college campuses for his religious faith. He believes it is his religious duty to proclaim his faith and convictions on college campuses. Plaintiff speaks in areas where he finds a significant number of college students. He has spoken at more than 300 college campuses.[2]

On October 14, 2002, plaintiff and a colleague visited MU. They took turns speaking in an outdoor area of MU called the "Academic Quad." "Their speech touched on the propriety and morality of certain activities." Complaint (Doc. 1), ¶ 19. After about forty-five minutes, MU security Officer Delph approached them and said, "Alright guys, you've got to get out of here. Got to go." Officer Delph explained that plaintiff needed to obtain permission to speak on the MU campus. Officer Delph told plaintiff that without a permit, he would be arrested.

Plaintiff then went to the student union. While there, plaintiff obtained a copy of what he identifies as the "speech policy," which provided as follows:

C. General buildings and ground space

---

[2] The Court notes that plaintiff's speaking activities have been the subject of several reported decisions. See Gilles v. Blanchard, 477 F.3d 466, 473 (7th Cir. 2007)(Posner, J.)(upholding university's limits on plaintiff's speech, including sponsorship requirement); Gilles v. Davis, 427 U.S. 197, 205 (3rd Cir. 2005)(holding plaintiff's speech toward woman constituted "fighting words" when plaintiff called her "Christian lesbo" and "lesbian for Jesus" and asked her whether she "lay down with dogs" and "are you a bestiality lover?"); Gilles v. Torgersen, 71 F.3d 497, 500-01 (4th Cir. 1995)(declining to reach issue of whether sponsorship requirement violated First Amendment; finding plaintiff lacked standing as a result of offered sponsorship); Gilles v. State of Indiana, 531 N.E.2d 220, 222 (Ind. App. 4 Dist. 1989)(upholding conviction for disorderly conduct, finding plaintiff's reference to crowd as "fuckers," "whores," "queers," and "AIDS people," and saying people were condemned to hell qualified as fighting words); Commonwealth v. Gilles, 2002 WL 32136351, 61 Pa. D&C4th 42, 48 (Pa. Com. Pl. 2002)(dismissing disorderly conduct charge, finding that plaintiff's remarks not fighting words, but protected speech).

> 1. Every person with legitimate business at the University has the privilege of free access to the public areas of the buildings and grounds during those hours when they are open, such hours to be determined by the President or designated University official. These areas are defined to include sidewalks, closed streets, entrances to buildings, corridors in classrooms and office buildings, library reading rooms, and common areas in the Shriver Center.
>
> 2. The President or a designated University official may deny this privilege of free access to an individual or group which disrupts the normal operation of the University.

Plaintiff next went to the campus security office. While there, he spoke with defendant Powers. Powers confirmed that some areas of the campus are designated as free speech areas. Plaintiff asked where he could find such a free speech area. Powers told plaintiff he could speak on city sidewalks or streets outside the campus. Plaintiff asked whether he would be permitted to speak on any campus property. Powers indicated he would not. Fearing arrest, plaintiff left the area.

Plaintiff, through his attorney, sent a letter to MU challenging its speech policy. MU General Counsel Robyn Parker responded with a letter dated November 27, 2002, in which she wrote, in part:

> Unlike parks and streets, a college campus is by tradition a place for study and introspection, not a free-for-all free-speech zone. See *Widmar v. Vincent,* (1981) 454 U.S. 263 fn5. Moreover, whatever the policy may be at other public institutions, Miami University has never dedicated the outdoor areas of its campus for use by the general public as a full-scale public forum. To the extent our campus is a "forum" at all, it is a forum for that which our faculty, staff, and students wish to say, hear and study, not for that which others may believe we should hear. Thus, while we certainly do allow visitors to walk through our campus, they may not make formal speeches and presentations, erect displays, or conduct similar activities unless invited to do so by the University or by a recognized student organization. . . .
>
> I must also disagree with your conclusion that your clients are not welcome to speak on our campus at any time or under any condition. It is

> common for individuals to come to Miami to preach to students. Our policy and practice has been accepted and followed by campus preachers from the Gideon's who each year distribute Bibles from the public street corners around our campus, to Brother Jeb, a noted local evangelist. In addition, Miami has many religious student organizations. These organizations regularly sponsor religious speakers on campus. I invite you to obtain a list of student organizations from the Office of Student Activities, . . .

Plaintiff thereafter wrote to fifteen student organizations, asking whether they would be willing to sponsor his speech. None of the student organizations agreed to sponsor plaintiff.

Plaintiff filed the instant action on October 14, 2004, asserting that MU's "legitimate business" speech policy is unconstitutionally vague, overbroad and discriminatory on its face, and as construed and as applied. Plaintiff alleges the policy violates his rights to free speech, the free exercise of religion, due process, and equal protection. Plaintiff seeks declaratory and inductive relief, as well as damages and attorney's fees.

## II. Motion to Dismiss

Defendants move to dismiss plaintiff's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. A motion to dismiss for failure to state a claim should not be granted unless it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002); *Thomas v. Eby,* F.3d , , 2007 WL 935706, at * 3 (6th Cir. Mar. 30, 2007). The complaint need only put a party on notice of the claim being asserted against it to satisfy the requirement of stating a claim upon which relief could be granted. Fed. R. Civ. P. 8; *Memphis, Tennessee Area*

*Local, American Postal Workers Union, AFL-CIO v. City of Memphis,* 361 F.3d 898, 902 (6th Cir. 2004). "A complaint need not anticipate every defense and accordingly need not plead every response to a potential defense. *Id.* All well-pleaded allegations must be accepted as true and be construed in favor of the non-movant. *Thomas,* F.3d at ; *Trzebuckowski v. City of Cleveland,* 319 F.3d 853, 855 (6th Cir. 2003).

### III. Discussion

### A. Proper Parties

Defendants argue Plaintiff is not entitled to a declaratory judgment as he fails to name the proper parties. Defendants contend the policy which Plaintiff seeks to have declared unconstitutional is neither Defendant Garland's nor Defendant Powers' policy; rather, it is MU's policy. As an examination of the substantive issues in this matter reveals Plaintiff fails to state a claim upon which relief can be granted, the Court declines to analyze whether Defendants are the proper parties.

### B. Due Process

"[W]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Thaddeus-X v. Ball,* 175 F.3d 378, 386 (6th Cir. 1999), *citing Albright v. Oliver,* 510 U.S. 266, 273 (1992), quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989). Plaintiff's due process claim purports to allege a denial of substantive due process. Specifically, the basis of Plaintiff's due process claim is that his campus visit constituted protected speech and, thus, he had "legitimate business" to

be allowed on campus. As argued by Defendants, Plaintiff's due process claim is based on the same actions upon which he claims denial of his First Amendment rights. As the First Amendment provides explicit constitutional protection, it must be the guide for analyzing Plaintiff's claims, not the more generalized notion of substantive due process.

### C. Equal Protection

"[T]he threshold element of an equal protection claim is disparate treatment. In order to establish an equal protection claim, [Plaintiff] must show that the alleged wrong was directed at [him] as a member of a class or group, singled out for discriminatory treatment." *Woodpointe Inn Assoc., L.P. v. City of Harper Woods,* 1995 U.S. App. LEXIS 4678 (6th Cir.), *citing Joyce v. Mayromatis*, 783 F.2d 56, 57 (6th Cir. 1986). A review of the Complaint in this matter reveals Plaintiff fails to allege he was singled out for discriminatory treatment. The Complaint is devoid of any facts which demonstrate similarly situated individuals were permitted to publicly speak on campus, notwithstanding the fact Plaintiff was not so permitted.

### D. Freedom of Speech and Free Exercise of Religion

"State colleges and universities are not enclaves immune from the sweep of the First Amendment." *Healy v. James*, 408 U.S. 169, 180 (1972). Nonetheless, the "First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *Perry Educ. Ass'n. V. Perry Local Educators' Ass'n,* 460 U.S. 37, 46 (1983), *quoting United States Postal Service. v. Council of Greenburgh Civic Ass'ns,* 453 U.S. 114, 129 (1981). It is well-settled that "the State, no less than a

private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Id.* "The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Id.* at 44.

The Supreme Court utilizes a forum analysis for evaluating restrictions of speech on government property. *See id.* at 45-46. This analysis first requires a court to determine within which forum the property is properly categorized:

1. traditional public forum;
2. limited public forum;[3] and
3. nonpublic forum.

*See Kincaid v. Gibson*, 236 F.3d 342, 348 (6th Cir. 2001) (en banc), *citing Perry* 460 U.S. 37 at 45. "In determining what property constitutes the relevant forum, courts focus on the access sought by the speaker." *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 349 (6th Cir. 1998), *citing Cornelius*, 473 U.S. at 801. Upon determining the appropriate nature of the forum, a court must then apply the appropriate standard of scrutiny to decide whether a restriction on speech passes constitutional muster. *See, e.g., Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666 (1998); *United States v. Kokinda*, 497 U.S. 720, 726-27 (1990).

---

[3] A "limited" public forum alternatively has been described as a "designated" public forum. *Kincaid*, 236 F.3d at 348 (*citing Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 679 (1998)); *see The Putnam Pit, Inc. v. City of Cookeville*, 221 F.3d 834, 842 (6th Cir. 2000) (describing the second type of forum as a "designated" public forum).

### 1. Traditional Public Forum

"A traditional public forum is a place 'which by long tradition or by government fiat has been devoted to assembly and debate,' such as a street or park." *Kincaid*, 236 F.3d at 348, *quoting Perry*, 460 U.S. at 45. The government's ability to restrict speech is most circumscribed in a traditional public forum. *Perry*, 460 U.S. at 45 ("In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed."). A content-based restriction on speech within a traditional public forum must be necessary to serve a compelling government interest and be narrowly drawn to achieve that interest. *Perry*, 460 U.S. at 45. A restriction on speech that is not content-based and that restricts the time, place or manner in which speech may be communicated is subjected to a different, less restrictive standard. *Id.* The government may enforce a reasonable, content-neutral time, place and manner restriction in a traditional public forum if the restriction is narrowly tailored to serve a significant government interest and leaves open ample alternative channels of communication. *Id.*

### 2. Limited Public Forum

A limited public forum is "public property which the State has designated, perhaps for only a given time, as open for use by the public for expressive activity . . . ." *Pouillon v. City of Owosso*, 206 F.3d 711, 715 (6th Cir. 2000). "Although the government need not retain the open nature of a limited public forum, 'as long as it does so it is bound by the same standards as apply in a traditional public forum.'" *Kincaid*, 236 F.3d at 348, *quoting Perry*, 460 U.S. at 46. On the other hand, a state's

reservation of a limited public forum to certain groups will be upheld if the restriction is content-neutral and reasonable in light of the purpose of the forum. *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-07 (2001)

### 3. Non-public Forum

The final category is the nonpublic forum. The government can most freely restrict speech in a nonpublic forum. A nonpublic forum is government property which is neither a tradition or a limited public forum. *See Pouillon*, 206 F.3d at 715. "The government may control access to a nonpublic forum 'based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral.'" *Kincaid*, 236 F.3d at 348, *quoting Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788 at 806.

### 4. MU Campus

Plaintiff seeks access to the open areas of MU's campus. The open areas are government property. The Court must therefore determine the nature of the forum.

Plaintiff argues the open areas are a traditional public forum. Plaintiff contends there is no Supreme Court decision which holds such areas are anything but a traditional public forum. Additionally, Plaintiff maintains, since there are certain areas on MU's campus designated for expressive purposes, these areas constitute a limited public forum. Plaintiff argues these areas are bound by the same standards for expression as apply to a traditional public forum.

Defendants maintain the open areas are not a traditional public forum. In support, Defendants rely upon *Widmar v. Vincent*, 454 U.S. 263, 274 n.5 (1981), which

observed that while for the students:

> the campus of a public university...possesses many of the characteristics of a public forum...[a] university differs in significant respects from public forums, such as streets or parks or even municipal theaters. A university's mission is education, and decisions of this Court have never denied a university's authority to impose reasonable regulations, compatible with that mission upon the use of its campus and facilities. We have not held, for example that a campus must make all of its facilities equally available to student and nonstudents alike, or that a university must grant free access to all of its grounds or buildings.

Whether the open areas of a state university's campus are a public forum cannot be determined by "the mere physical characteristics of the property cannot dictate forum analysis." *United States v. Kokinda*, 497 U.S. 720, 727.[4]

In determining what category of forum the open areas are, the discussion by the court in *Bowman v. White,* 444 F.3d 967, 976 (8th Cir. 2006), regarding the University of Arkansas at Fayetteville is instructive:

> A modern university contains a variety of fora. Its facilities may include private offices, classrooms, laboratories, academic medical centers, concert halls, large sports stadiums and arenas, and open spaces. The University of Arkansas at Fayetteville is this type of institution. Its open spaces, like those at most major universities, come in a number of different types. Some are enclosed quadrangles bordered on all sides by university buildings and traversed by sidewalks, while others are grassy areas or plazas on the edge of campus where the University's grounds abut the city property. Thus, labeling the campus as one single type of forum is an impossible, futile task. See *Justice for All v. Faulkner,* 410 F.3d 760, 766 (5th Cir. 2005) (stating that "the Supreme Court's forum analysis jurisprudence does not require us to choose between the polar extremes of treating an entire university campus as a forum designated for all types of speech by all speakers, or, alternatively, as a limited forum where any reasonable restriction on speech must be upheld"); see also *Ala. Student Party v. Student Gov't Ass'n*, 867 F.2d 1344, 1354 n.6 (11th Cir. 1989) (Tjoflat, J., dissenting) (stating that not all of a University campus is a public forum, but rather that a campus

---

[4] For example, the Supreme Court held a military base which permitted free civilian access and contained streets and sidewalks was not a traditional public forum. *Greer v. Spock,* 424 U.S. 828 (1976).

contains a variety of fora). Some places on the University's campus, such as the administration building, the president's office, or classrooms are not opened as fora for use by the student body or anyone else. As Bowman concedes, these areas are nonpublic fora. Other campus locations, such as auditoriums or stadiums, allow for certain speech on certain topics. These locations may be described as designated public fora. Further, the public streets and sidewalks which surround the campus but are not on the campus likely constitute traditional public fora. *Grace*, 461 U.S. at 177....

The objective evidence in the record shows [that the areas which Mr. Bowman desired to speak] combine the physical characteristics of streets, sidewalks, and parks, and are open for public passage. They do not include university buildings or stadiums, but they are located within the boundaries of the campus. The Union Mall and Peace Fountain are completely surrounded by University buildings. The physical characteristics of these spaces, "without more," might make them traditional public fora. *Grace*, 461 U.S. at 177; *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 515, 59 S. Ct. 954, 83 L. Ed. 1423 (1939) ("Wherever the titles of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."). However,"publicly owned or operated property does not become a 'public forum' simply because members of the public are permitted to come and go at will." *Grace*, 461 U.S. at 177. Rather, the open nature of these spaces is merely a factor to consider in determining whether the government has opened its property. *Grace*, 461 U.S. at 177. We must also examine the traditional use of the property, the objective use and purposes of the space, and the government intent and policy with respect to the property, not merely its physical characteristics and location. In particular, we must acknowledge the presence of any special characteristics regarding the environment in which those areas exist. *See, e.g., Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503, 506, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969) (noting the "special characteristics of the school environment"); *Greer v. Spock*, 424 U.S. 828, 838-40, 96 S. Ct. 1211, 47 L. Ed. 2d 505 (1976) (discussing the unique nature of military bases and the fact that these circumstances must be taken into consideration).

In the case of the University, although it "possesses many of the characteristics of a public forum," such as open sidewalks, "[it] differs in significant respects from public forums such as streets or parks or even municipal theaters." *Widmar v. Vincent*, 454 U.S. 263, 268 n.5, 102 S. Ct. 269, 70 L. Ed. 2d 440 (1981). A university's purpose, its traditional use, and the government's intent with respect to the property is quite different

> because a university's function is not to provide a forum for all persons to talk about all topics at all times. Rather, a university's mission is education and the search for knowledge - to serve as a "'special type of enclave' devoted to higher education." *ACLU Student Chapter - Univ. of Md., College Park v. Mote*, 321 F. Supp. 2d 670, 679 (D. Md. 2004) (quoting *Grace*, 461 U.S. at 180); *see Widmar*, 454 U.S. at 268 n.5 ("We have not held, for example, that a campus must make all of its facilities equally available to students and nonstudents alike, or that a university must grant free access to all of its grounds or buildings."). Thus, streets, sidewalks, and other open areas that might otherwise be traditional public fora may be treated differently when they fall within the boundaries of the University's vast campus.

As with the University of Arkansas at Fayetteville, MU's mission is education. Under *Bowman*, MU is not required to treat the open areas of its campus as traditional public fora. Notably, Plaintiff's complaint does not set forth facts from which it can be inferred that MU has dedicated any portion of its campus to use as a traditional public forum. To the contrary, the Complaint confirms that under MU's speech policy, the open areas of its campus are, at most, limited public fora. For example, Plaintiff's conversation with Officer Powers[5] establishes that the *only* areas which are designated for expressive activities, for which compliance with MU's speech policy is not necessary, are the city sidewalks and/or streets *outside of the campus*. Additionally, Ms. Parker's letter to Plaintiff, which Plaintiff quotes in his Complaint, states, "while we certainly do allow visitors to walk through our campus, they may not make formal speeches and presentations, erect displays or conduct similar activities unless invited to do so by [MU]

---

[5] Plaintiff's set forth the following exchange in his Complaint with Defendant Powers:
26. [Defendant] Powers confirmed that there are areas on the campus that are designated as free speech area and that there are other areas that are not so designated.
27. [Plaintiff] asked where he could find a designated area for expressive activities and [Defendant] Powers offered that he could speak on city sidewalks or streets outside of the campus...[Plaintiff] posed the question: "No campus property whatsoever?" To which [Defendant] Powers replied: "Correct."

or by a recognized student organization." Plaintiff makes no attempt to refute these characterizations of MU's policy. For these reasons, the Court finds that even when the pleaded facts are construed in the light most favorable to Plaintiff, the open areas of MU's campus do not constitute traditional public fora. Rather, for the purpose of this decision, the Court will consider the open areas to be limited public fora.

The next issue is whether the speech policy[6] impermissibly restrains free expression. "When the State establishes a limited public forum, the State is not required to and does not allow persons to engage in every type of speech. The State may be justified 'in reserving [its forum] for certain groups or for the discussion of certain topics.'" *Good News Club v. Milford Cent. School,* 533 U.S. 98, 106 (2001), *quoting Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829, (1995). The State's power to restrict speech is not limitless however. *Id.* The restriction must not discriminate against speech on the basis of viewpoint. *Id. citing Rosenberger* at 829. Additionally, the restriction must be "reasonable in light of the purpose served by the forum," *Id.* at 107, *quoting Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.,*

---

[6] Currently, Plaintiff maintains his challenge is to Defendant's access policy, not the speech policy. However, a thorough reading of Plaintiff's Complaint reveals the speech policy, not the access policy, was the basis upon which Plaintiff's expression was stopped:
>  20. Officer Delph declared bluntly, "Alright guys, you've got to get out of here. Got to go."
>  21. Officer Delph elaborated that [Plaintiff] would *need permission to speak on campus, without a permit,* Officer Delph advised that [Plaintiff] and his colleague would be arrested.
>  \*\*\*
>  28. [Defendant] Powers made plain to [Plaintiff] that he could not engage in any form of *expression* on the campus of MU. If he attempted to do so, he would be arrested.

(Plaintiff's Complaint, emphasis added). Nowhere in the Complaint does Plaintiff allege facts he was told to remove himself, or threatened to be removed, from MU's campus as he did not have "legitimate business". Instead, the facts as alleged in the Complaint, demonstrate he was told to stop his speaking as he had not complied with MU's speech policy. Accordingly, the Court will discuss whether, based on the facts alleged, the speech policy, which is discussed in the Complaint, imposes an impermissible restriction on speech.

473 U.S. 788, 806 (1985). The Court will therefore proceed to examine whether MU's speech policy is content-neutral and reasonable in light of the purpose served by the forum.

MU's speech policy requires a visitor to secure student sponsorship in order to speak on campus. Hence, MU's policy reserves the forum for a certain group, *i.e.,* those who have been invited by student organizations. The policy is content-neutral on its face. Furthermore, the Complaint is devoid of any factual allegations that the student sponsorship requirement results in viewpoint discrimination as applied. The Complaint does not allege that a condition of being a registered student organization is having no viewpoint associated with the Plaintiff. *See Bourgault v. Yudof,* 316 F.Supp.2d 411, 420 (N.D. Tex. 2004). Moreover, even if there is no student organization that will agree to sponsor Plaintiff's speech, Plaintiff fails to allege any facts which establish MU prohibits student groups holding views similar to Plaintiff's views. As discussed by the *Bourgault* court:

> There is no evidence or allegation that student organizations are only permitted...if they hold certain beliefs, or that students would be prohibited from forming an organization because of their viewpoint on a particular topic. There is no reason for the Court to believe that students...cannot form an organization regardless of their viewpoints.

*Id.* at 420-21. Here, there is no assertion that a student organization can only give sponsorship to speakers with certain content for the purpose of speaking. Accordingly, the Court concludes that MU's speech policy is content-neutral.

The purpose of MU, as a forum, is education. MU, as an institution of higher education, has a significant interest in "protecting the educational experience of the students in furtherance of [MU's] educational mission." *Bowman,* 444 F.3d at 980. MU

furthers its educational mission by requiring sponsorship from a student organization because speech is thereby limited to matters in which at least one group of students is interested. As such, MU's speech policy is reasonable in light of the purpose served by the forum.

Having determined that MU's speech policy is both content-neutral and reasonable in light of the purpose served by the forum, the Court holds that the policy does not violate Plaintiff's First Amendment rights.[7]

### E. Overbreadth and Vagueness

Due process requires a state enactment be held void for vagueness if its prohibitive terms are not clearly defined such that a person of ordinary intelligence can readily identify the applicable standard for inclusion and exclusion. *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The absence of clear standards guiding the discretion of the public official vested with the authority to enforce the enactment invites abuse by enabling the official to administer the policy on the basis of impermissible factors. *See Leonardson v. City of East Lansing*, 896 F.2d 190, 198 (6th Cir. 1990). The vagueness "doctrine requires that the limits the [government] claims are implicit in its law be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770 (1988). Thus, a statute or ordinance offends the First Amendment when it grants a public official "unbridled discretion" such that the official's decision to

---

[7] The same result was reached in a factually similar case in the recent decision by the Seventh Circuit in *Gilles v. Blanchard*, 477 F.3d 466, 473 (7th Cir. 2007). In *Blanchard*, Judge Posner dispensed with the forum analysis, and upheld the university's policy on the basis that it was consistent with limiting its facilities "to activities that further the interests of the university community." *Id.*

limit speech is not constrained by objective criteria, but may rest on "ambiguous and subjective reasons." *Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996), *cert. denied* U.S. , 118 S. Ct. 294 (1997).

MU's speech policy is not vague. The prohibitive terms are clearly defined so as a person of ordinary intelligence could readily define the standard for inclusion and exclusion. All public speeches by a visitor to MU's campus are prohibited unless invited by MU or a student organization. Additionally, there is nothing in the policy which permits MU officials to limit speech based on ambiguous and or subjective reasons. Nor is there any allegation that MU officials restrict the student organizations based upon content of prospective speech. In the absence of any allegations to the contrary, the Court cannot conclude the policy confers "unbridled discretion" on public officials.

A statute, ordinance, or resolution is unconstitutionally overbroad when there exists "'a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court.'" *Leonardson*, 896 F.2d at 195, *quoting City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984). Underlying the overbreadth doctrine is the concern that an overbroad statute will "chill" the exercise of free speech and expression by causing "'those who desire to engage in legally protected expression . . . [to] refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid.'" *Board of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987), *quoting Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491,(1985); *see also Dambrot v. Central Mich. Univ.*, 55 F.3d 1177, 1182 (6th Cir. 1995). A statute may be invalidated on its face as overbroad, however, only where the overbreadth of the statute is "substantial." *Broadrick v. Oklahoma*, 413 U.S. 601,

615 (1973); see also Jews for Jesus, 482 U.S. at 574.

MU's speech policy is not overbroad. Contrary to Plaintiff's assertion, his ability to engage in free speech in the open areas is not absolute. MU, even though it is a public university, has the right to limit public speaking on its campus by visitors. Its speech policy is properly drafted to accomplish this goal. Further, the speech policy does not have a chilling effect on legally protected speech as it regulates only the public speaking of visitors to the campus, which, under the circumstances, is properly subject to restrictions.

The Court declines to address whether MU's "legitimate business" access policy is overbroad and/or vague as it was not the basis for terminating Plaintiff's public speaking. As discussed above, contrary to Plaintiff's assertions, the basis for terminating Plaintiff's public speaking was his failure to comply with the speech policy.

Inasmuch as the Court has held that no constitutional violation has occurred, it is unnecessary to reach the issue of qualified immunity.

### III. Disposition

Construing the Complaint in the light most favorable to Plaintiff, and accepting all of the Complaint's factual allegations as true, the Court concludes Plaintiff can prove no set of facts that would entitle him to relief for violations of freedom of speech, freedom of religion, due process, and equal protection under 42 U.S.C. §1983. Accordingly, the Court **GRANTS** defendants' motion to dismiss (Doc. 6).

The Clerk shall enter final judgment in favor of Defendants, and against Plaintiff, dismissing this action in its entirety with prejudice.

The Clerk shall remove this case from the Court's pending cases and motions lists.

The Clerk shall remove Doc. 6 from the Court's pending motions list.

**IT IS SO ORDERED.**

_____
**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**